**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| SOLAMERE CAPITAL,<br>        Plaintiff,<br><br>        v.<br><br>MICHAEL A. DiMANNO and<br>ACCUIRE, LLC,<br>        Defendants. | No. 22-mc-91197-ADB |

**MEMORANDUM AND ORDER ON PLAINITFF'S MOTION TO QUASH THIRD-PARTY SUBPOENA**

CABELL, U.S.M.J.

Plaintiff Solamere Capital ("Solamere"), a Massachusetts limited liability company and "hedge fund operating out of New York" (D. 100, p. 13, ¶ 24, CA),[1] filed this action seeking to quash a Fed. R. Civ. P. 30(b)(6) third-party subpoena issued by defendants Michael A. DiManno ("DiManno") and Accuire, LLC ("Accuire").  (D. 1).  The subpoena seeks testimony and documents from Solamere in connection with a civil lawsuit brought by Amazing Insurance, Inc. ("Amazing") against DiManno and Accuire ("D and A") in the United States District Court in the Eastern District of California, *Amazing Ins., Inc. v. DiManno and Accuire, LLC*, 19-

---

[1]   "CA" refers to docket entries in a related California action described in the next sentence.

cv-01349-TLN-CKD (E.D. Cal. 2019) ("California Action").  (D. 1-6).

D and A, defendants and third-party plaintiffs in the California Action, submit the information "is directly relevant" to support their third-party claims for civil conspiracy and fraud against third-party defendant Alex Campos ("Campos").  (D. 15, p. 5).  The requested discovery revolves around Solamere's due diligence review and acquisition of an interest in nonparty Vensure Employer Services, Inc. ("Vensure").  (D. 1-6).

Contrary to D and A's arguments, the discovery is not "directly relevant" to the third-party claims in the California Action.  (D. 15, p. 5).  At best, two of the three categories of the claimed relevant matters D and A identify are tangentially relevant to the third-party claims.  The discovery is also outside the scope of Fed. R. Civ. P. 26(b)(1) ("Rule 26(b)(1)"); and D and A had ample opportunity to obtain the discovery from other sources, namely, Campos and Vensure.  *See* Fed. R. Civ. P. 26(b)(2)(C)(ii). Moreover, even limiting the discovery to a due diligence file or database and a report by David Glenn ("Glenn") to Solamere (D. 25), the burden on Solamere as a nonparty to produce this more limited discovery outweighs any likely benefit under Rule 26(b)(1).  As a result, and after conducting a hearing, the motion to quash (D. 1) is allowed.

## I.   <u>BACKGROUND</u>

By way of background, Accuire, a Florida limited liability company with a principal place of business in Folsom, California, provides staffing services and administers workers' compensation coverage for corporate clients.  (D. 6, ¶ 7, CA) (D. 100, p. 2, ¶ 7, CA).  DiManno is a part owner of Accuire and the company's CEO. (D. 6, ¶¶ 9-10, CA) (D. 100, pp. 8-10, ¶¶ 2, 13, CA).  Vensure, which Campos partially owns after the Solamere acquisition, is a professional employer organization ("PEO") and an insurance broker for Chubb Insurance ("Chubb"), according to the second amended third-party complaint in the California Action ("third-party complaint").  (D. 100, pp. 13, 17, ¶¶ 24, 43, CA).  At or around the time of Amazing's acquisition of an ownership interest in Accuire ("the Amazing/Accuire transaction"), Campos allegedly promised to provide advantageous workers' compensation insurance rates to Accuire through Vensure.[2]  (D. 100, p. 17, ¶ 43, CA). Campos owns Amazing and serves as its chief executive officer ("CEO").[3]  (D. 6, ¶ 12, CA) (D. 6-5, p. 3, ¶ 1.4, CA).

---

[2]   At the time of the Amazing/Accuire transaction, Campos owned 100% of Vensure as "a matter of public record."  (D. 22, p. 18). The Amazing/Accuire transaction took place before Solamere acquired an interest in Vensure.  (D. 15, p. 3) (D. 16-10, p. 3, § 8.6(a), CA).

[3]   The third-party complaint describes Amazing as "Campos's shell company."  (D. 100, ¶ 18, CA).

### A.  <u>The Subpoena</u>

The subpoena seeks a broad swath of documents from Solamere. These include documents: (1) "pertaining to disclosures made by Vensure and/or [Campos] to Solamere as part of Solamere's due diligence before investing in Vensure"; (2) describing "Solamere's internal policies or procedures for conducting due diligence"; (3) "pertaining to business proposals . . . provided to Solamere" during "negotiations leading to Solamere's investment in Vensure"; (4) "containing terms of the agreement for Solamere's investment in Vensure"; and (5) pertaining to Solamere's due diligence into [Campos] or Vensure."  (D. 1-6, p. 10).  The subpoena additionally requests documents that Glenn provided "to Solamere in regard to Solamere's investment in Vensure, including any information regarding [Campos]."  (D. 1-6, p. 10).

Topics listed for the Rule 30(b)(6) deposition are equally broad.  They encompass: (1) "Solamere's purchase of an interest in Vensure"; (2) the "nature of the relationship between Solamere and Vensure"; (3) "Glenn's role in Solamere's investment in Vensure"; (4) "Solamere's due diligence review of Vensure and" Campos; (5) Solamere's "internal policies or procedures" for conducting due diligence "of a potential deal"; and (6) "Solamere's knowledge of a relationship between Vensure," Campos, and Amazing, "and the claim of [Amazing] that it owns a 75% ownership interest in Accuire."  (D. 1-6, pp. 9-10).

Excluding any final report by Glenn, most of the documents originate from Vensure, as convincingly explained by Solamere's counsel. (D. 22, pp. 8, 44). As such, they are likely obtainable from Vensure or Campos, who owns 49% of Vensure after Solamere's acquisition of 51% of the company.[4] (D. 100, p. 13, ¶ 24, CA).

Relative to Glenn, Solamere describes him as an independent or fundless sponsor who "occasionally recommends or introduces a company to Solamere as a potential investment opportunity." (D. 24). In contrast, D and A depict him as "a compensated agent who conducted due diligence of Vensure" and Campos for Solamere.[5] (D. 25).

**B.**  **The California Action and Relevancy of the Discovery**

Understanding the relevancy of the requested discovery necessarily entails an understanding of the allegations in the first amended complaint ("FAC") and the third-party complaint.

---

[4]  *See also* n.2 supra.

[5]  Ultimately, the discrepancy in Glenn's role is immaterial. As discussed below, the burden imposed on Solamere to review and produce documents, including Glenn's report if one exists, from a database containing information regarding Solamere's investment in Vensure outweighs any likely benefit of the report in the California Action. *See* Fed. R. Civ. P. 26(b)(1). The importance of information in the report is minimal. As such, the discovery is not proportional under Rule 26(b)(1). *See* Fed. R. Civ. P. 26(b)(1); Fed. R. Civ. P. 26(b)(2)(C)(iii).

Accordingly, with a focus on Vensure's role, this court turns initially to the FAC and thereafter the third-party complaint.[6]

### 1. The FAC

As alleged in the FAC, in November 2016 Amazing entered into a Binding Letter of Understanding ("LOU") to purchase the ownership interest in Accuire with DiManno; Gardner Investment Holdings, LLC ("Gardner"); CAPM Holdings, LLC ("CAPM"); and KaiserKane Consulting, LLC ("KaiserKane"). (D. 6, ¶ 8, CA) (D. 6-1, CA). After execution of the LOU and accompanying ancillary documents, Amazing owned a 75% interest in Accuire, and D and A owned the remaining 25% interest.[7] (D. 6, ¶ 9, CA). Thereafter, DiManno misappropriated funds from Accuire and incurred "needless expenses." (D. 6, ¶ 15, CA). Accuire, in turn, failed to pay more than $700,000 owed to Vensure for PEO services. (D. 6, ¶ 16, CA) (D. 6-6, ¶ 6, CA).

In March 2019, Amazing, Accuire, DiManno, and United Brokers Insurance Agency, Inc. executed a term sheet, which contemplated Accuire buying back Amazing's 75% interest in the company. (D. 96, p. 3, CA) (D. 6-5, CA). Under the transaction, Accuire would

---

[6]   The third-party complaint mentions Solamere exactly once and only with respect to Campos's January 2018 plan to sell his interest in Accuire. (D. 100, p. 22, ¶ 69, CA).

[7] Amazing's ownership interest in Accuire is disputed. As alleged in the third-party complaint, at all relevant times, DiManno owned 49% of Accuire and Gardner, CAPM, and KaiserKane each owned 17% of Accuire. (D. 100, p. 9, ¶ 13, CA).

make a $350,000 down payment at closing, and Campos would "cause
Vensure to provide" a $350,000 line of credit. (D. 6-5, CA).
"Vensure's workers' compensation" for Accuire would "remain
unchanged." (D. 6-5, CA). After the closing, DiManno would own
100% of Accuire. (D. 6-5, CA). DiManno, however, never paid the
$350,000, and the closing did not take place. (D. 6, ¶ 14, CA).

As Accuire became more heavily indebted and DiManno continued
to mismanage the company, Amazing noticed a July 15, 2019 special
meeting in accordance with Accuire's amended operating agreement.
(D. 6, ¶ 18, CA). Due to disruptions, Amazing adjourned the
meeting. (D. 6, ¶¶ 25-26, CA). Shortly thereafter, Amazing
installed a new board of directors consisting of Campos, Vikash
Jain ("Jain"), and DiManno. (D. 6, ¶ 27, CA) (D. 6-11, CA).
Amazing also authorized Jain to work with a consultant to reduce
Accuire's expenses, obtain control of Accuire's email system, and
notify Accuire's vendors and other entities of the change in
management. (D. 6-11, CA) (D. 6, ¶ 27, CA).

## 2. <u>The Third-Party Complaint</u>

In contrast to the FAC, the third-party complaint alleges
that Campos, Jain, Gerald Douglas Anderton ("Anderton"), and Kara
Childress ("Childress") mismanaged Accuire. It also outlines a
series of proposals preceding the LOU. Specifically, these
proposals by Campos, Jain, and Anderton changed "the original deal"
between Amazing and Accuire to an "entirely different" deal. (D.

100, pp. 10-13, ¶¶ 16-23, CA).   The LOU sets out this entirely different deal.   (D. 16-9, CA) (D. 100, p. 12, ¶ 22, CA).   The underlying impetus for the deal was Accuire's need to obtain a workers' compensation policy with a large deductible by securing the necessary capital through selling Gardner's, KaiserKane's, and CAPM's interest in Accuire and, as the deal changed, DiManno's interest in Accuire as well.   (D. 100, p. 10, ¶¶ 13, 15, CA).

The third-party complaint depicts Vensure's involvement as twofold.   First, to "lure Accuire and DiManno into executing a sale of" Accuire to Amazing, Campos orally promised DiManno in November 2016 that he (Campos) would lower Vensure's workers' compensation insurance rates in exchange for Accuire "remain[ing] a Vensure customer for another year."   (D. 100, pp. 13, 17, ¶¶ II, 43, CA).   "DiManno confirmed" the promise in the LOU, which sets out the parties' agreement "that Amazing will cause Vensure to reduce [Accuire's] workers compensation" fees and rates.   (D. 100, p. 17, ¶ 43, CA) (D. 16-9, § 7, CA).   Thereafter, Campos falsely characterized the reduced rate as part of Amazing's payment to Accuire.   (D. 100, p. 17, ¶ 43, CA).

Second, Vensure made a loan to Accuire after the LOU's execution.   Specifically, in late 2016 or early 2017, Campos installed his "close associates," i.e., Jain, Anderton, and Childress, in positions of authority at Accuire.   (D. 100, p. 20, ¶ 58, CA) (D. 16-12, 16-14, 16-15, CA).   Childress, who was

Vensure's chief operating officer, and Jain had access to Accuire's bank accounts and proceeded to siphon money from Accuire to Campos, Amazing, "and Campos-owned entities." (D. 100, pp. 13, 19-20, ¶¶ 24, 53, 58, CA). The siphoning of funds and the underfunding of Accuire led to a chronic lack of liquidity and eventually forced Accuire to take out loans. (D. 100, pp. 20-22, ¶¶ 58-66, CA). Vensure made at least one of these loans. (D. 100, pp. 20, 22, ¶¶ 59, 66, CA). Relatedly, Childress "negotiated agreements on Campos's and Vensure's behalf so that Vensure would loan Accuire money." (D. 100, p. 20, ¶ 59, CA).

In short, Vensure's involvement in the events underlying the California Action arises from Campos's promise that Vensure would reduce Accuire's workers' compensation insurance rates and Vensure's loan to Accuire. In opposing the motion to quash, D and A identify the following as relevant to the third-party claims: (1) the misrepresentation of the advantageous workers' compensation rates; (2) the Vensure loan to Accuire; and (3) the disclosure to Solamere, if any, of Vensure's involvement in the Amazing/Accuire transaction and Vensure's characterization of that involvement. (D. 15, pp. 4-5) (D. 22, pp. 20-22, 31-32).

### 3. __Discovery in the California Action__

In February 2020, DiManno and Accuire served a third-party subpoena on Vensure requesting production of documents. (D. 55-1, CA). The fourth request asked Vensure for information

"regarding any loans" Vensure made to Accuire.  Request number
seven asked for information "reflecting any money transferred"
from Vensure to Accuire.  (D. 55-3, pp. 3, 8, CA).  Request number
nine asked Vensure for information regarding Amazing's purchase of
Accuire.  (D. 55-3, p. 9, CA).  Notwithstanding the opportunity,
the requests did not seek documents specific to Solamere.  (D. 55-
3, CA).  Vensure responded to the requests in May 2020 and did not
produce responsive documents.  (D. 55, p. 2).  In August 2020, D
and A moved to compel Vensure to comply with the subpoena.  (D.
55, CA).  In September 2020, the court in California allowed the
motion to compel and ordered Vensure to produce the requested
documents "no later than 9/25/2020," except with respect to request
number 13.  (D. 1-3, CA).  D and A received approximately 168,000
pages of documents from Vensure, but nevertheless submit they did
not receive anything about the Amazing/Accuire transaction or
Vensure's loan to Accuire.  (D. 22, p. 56).

Neither DiManno nor Accuire filed a motion seeking Vensure's
compliance with the September 2020 Order or a further motion to
compel production to obtain the information they presently submit
is missing.  Thus, for almost two years, D and A did not ask the
California court for a more fulsome production from Vensure with
the missing information.  Instead, they now seek to subpoena the
documents from Solamere.  Discovery is set to close on August 13,
2022, in the California Action.  A limited time period therefore

remains for D and A to ask the California court for a more fulsome production of documents.

In February 2020, D and A served requests for production on Campos.  (D. 44-3, CA).  The requests did not seek documents specific to Vensure or Solamere.  At best, one of the requests asked Campos for information related to Campos's communications with lenders for any loans made to Accuire.  (D. 44-3, p. 7, CA). In May 2020, D and A filed a motion to compel Campos to comply with the requests and produce the requested documents.  (D. 44, CA).  In September 2020, the California court deemed objections waived and ordered Campos to begin producing responses to the document requests within two days.  (D. 1-3).  Here again, for almost two years, D and A did not ask the court to enforce the Order by way of contempt or monetary sanctions.  Likewise, they did not file a further motion to compel production.  (D. 1-3).

D and A also deposed Campos "multiple times, including as a 30(b)(6) designee of non-party Vensure, and he provided information regarding his dealings with Solamere and its investment in Vensure," according to Solamere.  (D. 1, p. 10).  At the July 2022 hearing, Solamere's counsel likewise represented "there were questions asked about Solamere and . . . the diligence process" during Campos's Rule "30(b)(6) deposition."  (D. 22, pp. 8-9).  During the hearing, D and A's counsel stated he asked Campos

if Solamere knew about his past.[8]  (D. 22, p. 30).  Campos purportedly responded that he did not know.  (D. 22, p. 30).  D and A's counsel also allegedly asked Campos whether the Amazing/Accuire was disclosed to Solamere.  (D. 22, p. 31). Overall, Campos was "not forthcoming," according to D and A's counsel.  (D. 22, p. 33).

## II.  **DISCUSSION**

In seeking to quash the subpoena, Solamere argues the requested information is not relevant, more easily obtainable from other sources, and issued for an improper purpose.  Within these overarching arguments, Solamere additionally asserts the discovery is duplicative under Rule 26(b)(2)(C)(i), fails the proportionality analysis under Rule 26(b)(1), and places an undue burden or expense on Solamere as a nonparty in the California Action under Fed. R. Civ. P. 45(d)(3)(A) ("Rule 45(d)") and Rule 26(b).  (D. 1).  D and A also had ample opportunity to seek the discovery from Campos and Vensure, but they failed to ask for it, according to Solamere.  (D. 1, p. 10) (D. 22, pp. 8-11).  D and A's arguments are summarized and addressed below in the context of analyzing Solamere's arguments.

---

[8]  D and A's counsel does not identify whether the inquiry occurred during Campos's individual deposition or at one of the Rule 30(b)(6) depositions.

The law is straightforward.  A third-party subpoena is subject to the relevance and proportionality requirements of Rule 26(b)(1).  *See Holloman v. Clarke*, 320 F.R.D. 102, 103 (D. Mass. 2017) (third-party subpoena issued "pursuant to Fed. R. Civ. P. 45, is subject to the 'relevance' requirement of Fed. R. Civ. P. 26(b)(1)"); *Enargy Power (Shenzhen) Co. Ltd. v. Xiaolong Wang*, No. 13-11348-DJC, 2014 WL 4687784, at *2 (D. Mass. Sept. 17, 2014) ("Rule 45 subpoena must fall within the scope of proper discovery under Fed. R. Civ. P. 26(b)(1)") (citation omitted); *E.E.O.C. v. Texas Roadhouse, Inc.*, 303 F.R.D. 1, 2 (D. Mass. 2014) ("subpoena issued to a non-party pursuant to Rule 45 is subject to Rule 26(b)(1)'s overriding relevance requirement").  A Rule 45(d) subpoena is also subject to the constraints of Rule 26(b)(2).  *See Cates v. Zeltiq Asethetics, Inc.*, Civil Action No. 20-mc-91234-NMG, 2020 WL 5517457, at *2 (D. Mass. Sept. 14, 2020) (setting out Rule 26(b)(2)(C)'s requirements in context of Rule 45 subpoena). Rule 26(b)(1) instructs that:

> Parties may obtain discovery regarding any nonprivileged matter that is *relevant* to any party's claim or defense *and proportional* to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and *whether the burden or expense of the proposed discovery outweighs its likely benefit.*

Fed. R. Civ. P. 26(b)(1) (emphasis added).  Rule 26(b)(2) requires this court to limit discovery when it "can be obtained from some

other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2). *Green v. Cosby*, 152 F. Supp. 3d 31, 34 (D. Mass. 2015) (addressing Rule 45 subpoena) (citation omitted), *modified on reconsideration*, 160 F. Supp. 3d 431 (D. Mass. 2016).

Rule 45(d), in turn, requires this court to "quash or modify a subpoena" that "subjects a person to undue burden." Fed. R. Civ. P. 45(d); *Green*, 152 F. Supp. 3d at 34. Furthermore, "[c]oncern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs." *Cascade Yarns, Inc. v. Knitting Fever, Inc.*, 755 F.3d 55, 59 (1st Cir. 2014) (citation omitted). When determining whether a Rule 45(d) subpoena duces tecum results in an undue burden, factors to consider include "'the relevance of the documents sought, the necessity of the documents sought, the breadth of the request,'" and the "'expense and inconvenience.'" *Behrend v. Comcast Corp.*, 248 F.R.D. 84, 86 (D. Mass. 2008) (examining Rule 45(c), the prior iteration of Rule 45(d)) (quoting *Demers v. LaMontagne*, Civ. A. No. 98-10762-REK, 1999 WL 1627978, at *2 (D. Mass. May 5, 1999)); *see also Green*, 152 F. Supp. 3d at 36 (considering relevance, requesting party's need for discovery, breadth of request, and burden when analyzing nonparty subpoena). As the party resisting discovery, Solamere "bears the burden of

showing the subpoena imposes an undue burden."[9]  *Green*, 152 F. Supp. 3d at 35 (citations omitted).

Turning to the relevance and proportionality of the information, D and A proffer three categories of relevant matters, as previously noted.  First, they identify the "[a]dvantageous premium rates for Vensure," which Campos promised to DeManno to induce Accuire to enter the transaction with Amazing.  (D. 15, p. 5) (D. 22, pp. 20-21).  Second, D and A postulate that the nature of Amazing's purchase of Accuire described, if at all, by Vensure during Solamere's due diligence is relevant.  (D. 15, p. 5) (D. 22, pp. 27-28).  Third, they maintain that, after Campos, Jain, Childress, and Anderton stripped Accuire of funds, Vensure made a loan to Accuire.  (D. 22, p. 21).  "Those funds would then be funneled to Campos, while leaving Accuire on the hook to repay them to Vensure."  (D. 100, p. 20, ¶ 59, CA).  With respect to all three categories, D and A rely on the third-party claims for civil conspiracy and fraud claims as the basis for discovery.  According to D and A, Glenn is the "most knowledgeable" individual "about the information provided to Solamere in its due diligence review of Vensure" but is evading service.  (D. 15, p. 5) (D. 22, p. 26).

Relevance is broadly construed at the discovery stage.  *See Green*, 152 F. Supp. 3d at 34-35.  Rule 26(b)(1) further restricts

---

[9]    During the hearing, Solamere offered to provide a declaration.  (D. 22, pp. 14-15).

relevance to matters "relevant to [a] party's claim."  Fed. R. Civ. P. 26(b)(1); *see* Fed. R. Civ. P. 26(b)(2)(C)(iii) (allowing court to foreclose discovery if "outside the scope permitted by Rule 26(b)(1)).

The court first examines the three categories of relevant matters seriatim before proceeding to the subpoena's requested discovery.  With respect to Vensure's premium rates, Campos's promise to DiManno to provide more advantageous workers' compensation rates from Vensure to lure Accuire into the Amazing/Accuire transaction is one of several representations the third-party complaint identifies as false or fraudulent.  (D. 100, pp. 13, 17, 27, ¶¶ II, 41-43, 93-94, CA).  As such, the promise to provide advantageous workers' compensation rates is relevant to the fraud claims and, by extension, the conspiracy claim, which alleges the conspirators "planned to defraud" and "financially drain Accuire."  (D. 100, p. 30, ¶ 115, CA).  The subpoena's deposition topics and requests to produce are relevant to the conspiracy and fraud claims to the extent the workers' compensation rates fall within such topics and requests.  By way of example, requests one and six potentially capture this information.

In contrast, the manner in which Vensure characterized its involvement in the Amazing/Accuire transaction to Solamere and/or whether it disclosed that involvement to Solamere is not relevant to the conspiracy and fraud claims or otherwise relevant in a

broader sense.  To be sure, the Amazing/Accuire transaction plays a central role in the fraud and conspiracy claims.[10]  Vensure's disclosure of its involvement, if any, and the characterization of its involvement in the transaction to Solamere, however, is not probative of the primary allegations regarding the Amazing/Accuire transaction in the third-party complaint.  These involve other individuals (Campos, Jain, and Anderton) and Amazing luring D and A into executing the transaction without any intention to consummate the deal (D. 100, pp. 13-17, ¶ II, 25-43, CA) and then siphoning funds from Accuire and forcing the company to take out loans, including the Vensure loan.

With respect to Vensure's loan to Accuire, Campos purportedly instructed Vensure to make the loan in July 2019.  (D. 15, p. 2).  The third-party complaint notes that, by siphoning funds from Accuire, the individual third-party defendants (Campos, Jain, Anderton, and Childress) forced Accuire to obtain loans "from at least two Campos-owned entities," one of which was Vensure.  (D. 100, p. 22, ¶ 66, CA).  Childress negotiated the loan, and the loaned money was thereafter funneled to Campos.  (D. 100, pp. 20-21, ¶¶ 59, 61, CA).  Accordingly, the Vensure "loan" constitutes part of the planned conspiracy "to defraud, mislead, and

---

[10]  In assessing relevance, this court recognizes and has considered Campos's cross-ownership interests in Amazing and Vensure as well as any conflict of interest posed by such ownership.

financially drain Accuire" and is therefore relevant to the fraud and conspiracy claims.  (D. 100, p. 30, ¶ 115, CA).

Having set the stage, the court turns to the core dispute: whether the requested discovery set out in the subpoena is subject to production.  First and foremost, the subpoena's deposition topics are unreasonably cumulative of what D and A already obtained during one or more depositions of Campos; and, to the extent not cumulative, D and A had ample opportunity to obtain the information during such depositions, including during the Rule 30(b)(6) deposition of Vensure.  *See* Fed. R. Civ. P. 26(b)(2)(C).  In this respect, and based on the representation of Solamere's counsel, D and A's counsel asked Campos about Solamere and the due diligence process during a Rule 30(b)(6) deposition.[11]  (D. 22, pp. 8-9).  She also states, and this court finds, that Campos "provided information regarding his dealings with Solamere and its investment in Vensure."  (D. 15, p. 10).

Relatedly, D and A's counsel represents he asked Campos the following: "Did Solamere know about your past?"; "Does Solamere know about the fact you were barred from the insurance industry in Florida?"; and "Did Solamere know that you were barred from the mortgage industry in Georgia?"  (D. 22, p. 30).  Although Campos responded that he did not know, Solamere's knowledge about Campos's

---

[11]  Counsel did not specify the entity Campos represented as the Rule 30(b)(6) designee.

past is not relevant to the civil conspiracy or fraud claims.   D and A's counsel also represented that he asked Campos whether the Amazing/Accuire transaction was disclosed to Solamere, and Campos was "not forthcoming."   (D. 22, pp. 31, 33).   In any event, even assuming the relevance of these inquiries, the burden imposed on Solamere as a nonparty outweighs the likely benefit of the information under Rule 26(b)(1).   Similar to the deposition topics in the Solamere subpoena, D and A's counsel could have asked Campos questions during the Vensure Rule 30(b)(6) deposition (D. 22, p. 25) about Solamere's due diligence review and investigation of Vensure and Campos.   D and A's contention that Campos was unable to provide helpful information at his depositions because this is "a fraud case" involving concealment (D. 22, pp. 25-26) does not override this court's determination that D and A had ample opportunity to seek this information within the meaning of Rule 26(b)(2)(C)(ii).

Similar reasoning forecloses production of the subpoena's requested documents.   D and A requested documents from Vensure in the California Action; moved to compel production, which the court allowed (except for request number 13); and Vensure produced approximately 168,000 pages of documents.   Although the document requests in the Solamere subpoena do not identically mirror the requests to Vensure in the California Action (loans to Accuire and information regarding Amazing's purchase of Accuire), they do

partially overlap.  (D. 55-3, CA) (D. 1-6, p. 10).  The discovery
presently sought is therefore, in part, unreasonably cumulative or
duplicative under Rule 26(b)(2)(C)(i).

It is also a fishing expedition, as is the requested
deposition discovery.  By way of explanation, D and A's counsel
maintains the 168,000 pages of documents did not include "anything
about the [Vensure] loan" or "really anything about the Amazing-
Accuire deal."  (D. 22, p. 56).  The requests, however, asked for
loan and information regarding the Amazing/Accuire transaction.
(D. 55-3, CA).  Having received the estimated 168,000 pages of
documents from Vensure in response to document requests asking for
loans and information regarding the Amazing/Accuire transaction
(D. 55-3, CA), D and A's insistence that Solamere has such
documents is based on hope and speculation.  *See Ameristar Jet*
*Charter, Inc. v. Signal Composites, Inc.*, 244 F.3d 189, 193 (1st
Cir. 2001) (affirming motion to quash deposition subpoenas of
nonparty corporate employees based on mere "'hope' that" testimony
"will contradict" prior deposition of nonparty corporate employer;
and characterizing such "'cumulative or duplicative'" discovery as
"fishing expedition") (citing Rule 26(b)(2)(i) and (ii)).

Moreover, the proposed requests to Solamere are broader than
the requests in the Vensure subpoena in the California Action.
They also differ from the Vensure requests because they target
Solamere's investment in Vensure.  D and A had ample opportunity

to ask Vensure for all documents provided by Glenn in connection with the Solamere investment in Vensure.  Specifically, they could have included such a request in the Vensure subpoena in the California Action.  Likewise, they had ample opportunity to seek other related documents regarding the Solamere investment directly from Vensure in the Vensure subpoena.  (D. 55-3, CA).  Here again, their failure does not warrant giving them a second opportunity. Exercising this court's discretion, Rule 26(b)(2)(C)(ii) forecloses that opportunity.  *See Heidelberg Americas, Inc. v. Tokyo Kikai Seisakusho, Ltd.*, 333 F.3d 38, 41 (1st Cir. 2003) (affirming district court quashing third-party subpoena *duces tecum* and noting "[d]istrict courts exercise broad discretion to manage discovery matters").

Similarly, the document requests to Vensure (D. 55-3, CA) did not ask for information regarding Vensure's workers' compensation rates offered to Accuire.[12]  To the extent the document requests in the Solamere subpoena encompass such information, D and A "had ample opportunity to obtain the information" in the California Action through discovery under Rule 26(b)(2)(C)(ii).

In sum, the proposed discovery is either unreasonably cumulative or duplicative under Rule 26(b)(2)(C)(i), or D and A had ample opportunity to obtain the discovery under Rule

---

[12]    D and A's counsel represented at the hearing that Accuire "never got" the promised rates.  (D. 22, p. 21).

26(b)(2)(C)(ii).   In the alternative, the proposed discovery is outside the scope of Rule 26(b)(1) and therefore barred under Rule 26(b)(2)(C)(iii).   As discussed, and again in the alternative, Vensure's characterization of its involvement in the Amazing/Accuire transaction and its disclosure, if any, to Solamere is not relevant.   Moreover, with discovery still open in the California Action, D and A retain the ability to ask the California court for the discovery sought from Solamere. Accordingly, to this limited extent, the discovery "can be obtained from" other sources within the meaning of Rule 26(b)(2)(C)(i).

Overall, the requested discovery is not highly or obviously relevant to the civil conspiracy and fraud claims. *See Heidelberg*, 333 F.3d at 41.   In contrast, the burden to Solamere outweighs any such relevance.   *See id.* (stating subpoenaed "documents are not obviously, and perhaps not even reasonably calculated to lead to other discoverable materials," and burden to nonparty, "by contrast, appears to be significant").

Indeed, *Heidelberg* involves circumstances similar to the case at bar and is therefore instructive.   Like D and A, the defendant in the underlying litigation in *Heidelberg* sought from a nonparty "all documents received, reviewed or generated by Heidelberg relating to the possible acquisition of (a) an ownership interest in [the plaintiff in the underlying litigation], or (b) any other type of business affiliation with [the plaintiff]."   *Id.* at 40.

22

The First Circuit emphasized the undue burden to the nonparty stemming from the breadth of the subpoena, including the all-encompassing nature of the request.  *Id.*

As a final matter, D and A state "they would be satisfied" with "production of Glenn's due diligence file and [the] report" he provided to Solamere.  (D. 25).  The burden on Solamere, a nonparty, to produce this more limited discovery nevertheless outweighs its likely benefit under Rule 26(b)(1).  Thus, even limiting the extent of discovery in this manner, the discovery is not subject to production.  *See* Fed. R. Civ. P. 26(b)(2)(C)(iii).

## III.  <u>CONCLUSION</u>

In accordance with the foregoing discussion, the motion to quash (D. 1) is **<u>ALLOWED</u>**.


<u>/s/ Donald L. Cabell</u>
DONALD L. CABELL, U.S.M.J.

DATED:  August 8, 2022